## PERKINS *v.* NASHUA CARD & GLAZED PAPER CO.

*(Circuit Court, D. New Hampshire.   May 15, 1880.)*

PATENT—TWO YEARS' PUBLIC USE.—Use of machine by a patentee in
his business for more than two years before applying for a patent, and
by workmen under no pledge of secrecy, though the general public
were not permitted to visit the shop where it was being used, is such
public use as will vitiate the patent therefor.

SAME—SAME.—To constitute public use actual knowledge of an in-
vention need not have been derived by any one interested to practice
it It is sufficient if one or more persons, not under a pledge of secrecy,
saw the invention practiced, or even might have seen it had they used
their opportunities, provided it was, in fact, practiced in the ordinary
way after being completed.

In Equity.

*Geo. D. Noyes,* for complainant.

*Wadleigh & Fish* and *H. S. Clark,* for defendant.

LOWELL, C. J. There is very little conflict of evidence in this case. The patentee made a machine containing his invention in the year 1857, and in 1863 he substituted for it another varying in form and proportions, but not in principle. These machines he used successively in the ordinary way of his business, as a maker of card and pasteboard, until he applied for his patent, in 1876. The specification and model represent precisely the machine of 1863. During the time that the machines were used they stood in the room with several other machines necessary for the other processes of making, drying and coloring pasteboard, and were operated chiefly by one man, Moulton, who was sometimes assisted by one other. About 23 workmen were employed upon the other parts of the manufacture. The doors of the factory were usually kept locked, and each of the 25 workmen had a key. How many visitors came to the factory is one of the disputed points. There were occasional visitors, but not many persons came to the factory from mere curiosity. During some months Mr. Denison, a friend of the patentee, was given the use of an upper room for making tags, and his workmen passed in sight of the pasting machine. It is not proved that any workmen, visitors, or other persons acquired or divulged a knowledge of the mode of operation of the machine, until the workman Moulton gave that information to the defendants, in 1876.

Was the invention in public use for more than two years before Perkins applied for his patent? The time was enough. Was the use a public use? The law desires to encourage inventors to make their discoveries known for the improvement of the art, and to discourage an extension of the monopoly beyond the statutory period. For these reasons, and because of the difficulty of ascertaining the amount of knowledge which may have been derived from the exhibition, publication or use of the invention, it has always been held that when the public have had means of knowledge they have had knowledge of the invention. Thus, if a book has been pub-

lished describing the invention, it is not important that no one has read it. *Stead* v. *Williams,* 7 M. & G. 818. If a pier has been placed in the bed of a river, or a pipe under ground, it is conclusively presumed to be known to all men.

It has been intimated that a use in a workshop, where the workmen are pledged to secrecy, may not be a public use. *Kendall* v. *Winsor,* 21 How. 322; *Charge of Curtis,* J., — ; *Bevin* v. *Easthampton Bell Co.* 9 Blatch. 50; *Heath* v. *Smith,* 3 Ellis & B. 255. In the last of these cases it is held that if the invention has been worked in the ordinary way, without an injunction of secrecy, the use is public. In *McClurg* v. *Kingsland,* 1 How. 202, it is said by Mr. Justice Baldwin, *obiter,* that use in a factory is a public use.

A use very trifling in amount, or a publication purely technical, or a single sale, have often been held to deprive an inventor of his patent, without evidence that any one interested to acquire knowledge of the invention had acquired it. *Henry* v. *Prov. Tool Co.* 14 Off. Gaz. 855; *Egbert* v. *Lippman,* Id. 822; *McMillan* v. *Barclay,* 5 Fish. 189; *Re Adamson's Patent,* 6 D. G. M. & G. 420; *Patterson* v. *Gas-Light Co.* 3 App. Cas. 239; *Lange* v. *Gisborne,* 31 Beav. 133.

The difference between this case and *Manning* v. *Cape Ann Isinglass Co.* is that in that case the inventor, after dissolving his partnership, permitted his partner to continue to use the invention. Neither of the partners used the invention except in their respective factories. The circumstance makes that case a little stronger, but my opinion was that the use by the firm before they dissolved their partnership was a public use. Taking these decisions together, I understand the law to be that actual knowledge of the invention need not have been derived by any one interested to practice it; it is enough that any one or more persons, not under a pledge of secrecy, saw the invention practiced, or even might have seen it if they had used their opportunities, provided it was in fact practiced in the ordinary way after being completed. And it must be held either that the workmen and visitors were a part of the public, or that they were persons from whom the public might have acquired the art without a breach of trust.

There was no pledge of secrecy proved here, and there was some evidence that none was exacted from anybody. There was no evidence of concealment except that the factory was not open to chance visitors. It was understood, I suppose, as most factories are conducted with no intention of divulging any secrets, and none to have curious and prying persons admitted; but without any special precautions beyond what prudent men, who do not care to be interrupted in their business, would usually adopt. For my own part I should have some doubt whether a pledge of secrecy, exacted of a number of workmen who had nothing to do with the machine in question, and had opportunity to examine it if they chose, would make the use a secret one. There is some evidence intended to prove that the use was experimental; but, upon the whole record, it is clear that the machines were used for about 20 years in the ordinary business of the patentee, and worked so well that when Moulton first expressed an intention of leaving the factory and building a machine for the defendants the plaintiff raised his wages one-third. He did not say it would involve a breach of trust. A short time before the patent was applied for some experiments were made, which resulted in nothing of importance, and, I fear, were intended to benefit the patent rather than the machine. An improvement has now been made, but it is not described in the specification or shown in the model. At all events, a machine which, whether entirely satisfactory or not, has been run in the ordinary course of business for 20 or for 30 years, and which is patented precisely as it was used, cannot be properly called an experimental machine.

The decree must therefore be: Bill dismissed, with costs.