STAR MFG. CO. v. CRESCENT FORGE & SHOVEL CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 19, 1910.)

No. 1,647.

1. PATENTS (§ 75*)—VALIDITY—PRIOR USE.

The commercial use of a machine for more than four years, although its operation was unsatisfactory to the inventor, leading to frequent experiments to improve the combination and finally to the addition of an element of such value that a patent was applied for, was an abandonment to the public of the invention so far as it was embodied in the combination before the addition of such improvement, and invalidates a claim of the subsequent patent from which the new element is omitted.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 93–97; Dec. Dig. § 75.*

Abandonment of invention, see note to Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 70 C. C. A. 6.]

2. PATENTS (§ 328*)—PRIOR USE—UPSETTING MACHINE FOR PLOWSHARES.

The Clark patent, No. 734,161, for an upsetting machine for plowshares, claim 1, is void for prior public use for more than two years of the combination claimed therein.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Suit in equity by the Star Manufacturing Company against the Crescent Forge & Shovel Company and O. B. Thorp. Decree for defendants, and complainant appeals. Affirmed.

The appellant, Star Manufacturing Company, was substituted as complainant—through its purchase of the patent in suit—in the place of the Weyborn Company, original complainant in a bill filed against the appellees, alleging infringement of letters patent No. 734,161; and this appeal is from a decree on final hearing, dismissing the bill for want of equity. The patent referred to was issued to W. A. Clark July 21, 1903; on an application filed April 17, 1903, for "upsetting machine for plowshares." Its specifications state:

"The object of my invention is the production of a machine for upsetting, and thereby thickening, the oblique ends of plowshares to adapt such upset plowshare ends to be more perfectly and firmly welded to their landsides; and it consists, essentially, of a longitudinally-slidable carriage carrying two sets of rolls, in form frustums of cones, each set mounted at substantially right angles to the other, the bases of the set of horizontal rolls being uppermost and the tops—small ends—of the set of vertical rolls being adjacent to and very nearly in contact with the edges of the bases of the horizontal rolls. For the carriage described above a track is provided; also a holder to support the plowshares while being upset. Suitable mechanism for operating the reciprocating carriage is likewise requisite."

The several parts of the machine are shown in drawings and described with references thereto, including "a presser-foot rigidly connected with and projecting from the longitudinally slidable carriage * * * in front of the upsetting rolls, * * * and into close proximity to the upper face of the plowshare."

And it is further stated in the specifications:

"By reason of the thinness of a plowshare, that it may not be too clumsy and heavy, and the difficulty of maintaining it at a welding heat for a sufficient length of time, on the one hand, and the danger of burning the metal composing it, on the other, the welding of the same to a landside is a difficult operation, and when the welding is accomplished the thickness of the share at and about the weld is usually considerably diminished. By upsetting the oblique end of the share a greater body of metal is brought together at the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

place of welding, thereby reducing the difficulty of the operation and leaving its thickness ample along the line of the weld between the share and land-side."

Three claims are contained in the patent—whereof claims 2 and 3 include the above-mentioned "presser-foot" in the combination—but infringement is asserted only in respect of claim 1, which reads:

"1. In a machine for upsetting plowshares, in combination, a longitudinally-slidable carriage, two sets of upsetting-rolls in form frustums of a cone—each set mounted therein, at substantially right angles to the other set, the bases of one set of rolls being horizontal and uppermost, and the tops or small ends of the other set of rolls being vertical and adjacent to the bases of the horizontal rolls and very nearly in contact with the edges thereof, a track for the carriage to travel upon and a holder to support a plowshare while it is being upset, substantially as and for the purpose specified."

The questions and facts in controversy which are involved for consideration on this appeal are stated in the opinion.

Otto R. Barnett, for appellant.

George B. Gillespie, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The patent in suit, No 734,161, is for an "upsetting machine for plow-shares," issued to W. A. Clark, July 21, 1903, on his application filed April 17, 1903, and the utility is unquestionable of the means described for making plowshares in finished condition, to be sold as "commercial shares" for replacing those which have been worn out in use. Its improvement over prior patents in evidence, for like object, is undoubted, although any invention which may be disclosed in the combination is of narrow scope. The defenses set up against the appellant's bill for infringement were: (1) That the patent was invalid for want of novelty and invention; (2) that the device thereof was not infringed by the appellees' machine; and (3) that the patent device was in public use for more than two years prior to the application for a patent. On final hearing the bill was dismissed for want of equity. As the charge of infringement rests alone on claim 1, with no dispute in reference to the alleged infringing structure, the inquiry hinges on the scope and validity of that claim.

The specifications of the patent (and as well the claims) limit the alleged invention to a combination of various means in a machine (as a unitary structure) for making plowshares, and patentability of the device rests alone on invention and novelty in such combination of elements—conceded to be severally old—in the patent structure as an entirety. Its mechanism is not complicated, consisting of a slidable carriage and track for horizontal travel, upsetting rolls, holder for the plowshare and a so-called "presser-foot" to prevent buckling up of the metal in the process of upsetting. The main elements (and only ones in controversy) are: (1) The means for upsetting the metal to make the desired form of plowshare, consisting of two sets of rolls—shown in the patent as two upper and three lower rolls—"in the form of frustums of cones, which operate respectively and simultaneously upon the edge and side of the share;" and (2) co-operating means, described as "a presser-foot rigidly connected with and projecting from the longitudinally-slidable carriage in front of the upsetting rolls and

into close proximity to the upper face of the plowshare." The testimony submitted on behalf of the appellant (patentee) dwells upon this presser-foot provision as the culminating feature of the invention, which made the machine a success, after the inventor had devised and used upsetting rolls alone as the new means for making plowshares wherein fault had developed in "buckling up" of the metal, causing extra work to fit the shares for use. Claims 2 and 3 of the patent include this presser-foot in the combination, but it is omitted in the enumeration of elements set forth in claim 1 as the subject-matter of invention

In the appellees' machine, alleged to be an infringement, neither the presser-foot nor any equivalent special means for its purpose is employed, although its arrangement alone of upsetting rolls appears to operate without the above-mentioned defect of buckling. This machine—which was made and used in the appellees' shops long before the patentee (Clark) filed his application in the Patent Office—differs otherwise from that described in the patent in these particulars: That it has duplicate upsetting means, so that two shares instead of one are upset in one movement of the carriage; that each of these means has a single upper roll, instead of two, and two lower rolls, instead of three, shown in the patent; that it has a weighted block, to be wedged down upon the share to hold it in position, instead of the plate (of the patent) clamped on the share by means of a cam lever. The appellant recognizes that the appellees are not chargeable with infringement of claims 2 and 3, but contends that claim 1 is infringed, and that the essence of the invention is thereby appropriated. On the face of the patent, force appears for the contention, in substance, that two combination inventions are disclosed, with claim 1 allowed for the primary (operative) device and claims 2 and 3 for supplemental improvements. Under the undisputed facts in evidence, however, we are of opinion that claim 1 cannot be sustained upon such interpretation; that the validity of the patent must rest on the combination described in the other two claims not infringed by the appellee; and that we are not required to ascertain from the testimony whether priority appears in the patentee for such (assumed) primary invention.

The facts referred to as inconsistent with the monopoly sought under claim 1 are these: The patentee, Clark, introduced in the shops of the Weyborn Company (the original complainant in the present bill) a machine, wherein upsetting rolls were substituted for upsetting means in prior use, which was completed and in service as early as December, 1898; and the machine, with rolls arranged substantially as described in the patent, was used for upsetting plowshares for a constant and growing trade in the product, up to "about June or July, 1901," when another machine was completed, having the further device of the patent called "a presser-foot." It is conceded that the last-mentioned machine was the perfected combination described in the patent—for which the patentee filed his application April 17, 1903—and that it was used continuously in making plowshares for commercial sale during the intervening time. The witnesses—patentee and several employés of the Weyborn Company—do not furnish definite dates for either of the equipments referred to, nor accurate descrip-

tions of the first-mentioned machine, nor of alleged changes made to improve its operation; but we believe no later date than above stated for commencement of operations with the first machine is fairly deducible from their testimony, and the patentee's own version is adopted as the best evidence of the date when the patent combination was completed and entered into commercial use. Their testimony, however, leaves no room for doubt that the machine of 1898 embodied the combination set out in claim 1 of the patent, namely, the elements (a) slidable carriage, (b) two sets of upsetting rolls, each mounted at right angles to the other as needful for their function, (c) a holder for the plowshare, and (d) a track for the carriage, and that such combination was not only operative, but in regular commercial use in the shops (successively in one and the other machine) during a period of four years and more prior to the application for a patent.

The above-mentioned use of the machines successively appears from many pages of testimony, introduced by one and the other party upon the issue of public use raised by the answer, as affecting the validity of the patent, and the evidence is discussed entirely in that view in all the briefs. Counsel for the appellant contends, in substance, thereupon: That it establishes the unsatisfactory operation of the earlier machine throughout its use; that a considerable portion of the shares made therewith were defective, having a crimp or buckle in their upset edges which required extra work to fit them for sale, although the major portion of the product was free from fault; that the patentee was constantly working over the machine and devising means to correct this failure, succeeding therein only when he introduced the "presser-foot" in 1901; and that all such preliminary use was experimental, not within the inhibition of the statute. In reference to the ultimate combination (claims 2 and 3), we assume that the defense of abandonment to the public, in commercial use for more than two years, is not proven; that the machine was not perfected earlier than June, 1901, and such prior use of the combination as may be inferred from the testimony was experimental in its nature, not amounting to abandonment of the invention. This view, however, does not include the first machine, which plainly was a complete and operative embodiment of the alleged primary invention (of claim 1), nor the transfer and use of all of its means, as an entirety, in the new combination. In so far as the patentee exercised invention therein, it was completely formulated and disclosed in the machine of 1898, and it is immaterial that its operation was unsatisfactory to him, inducing frequent experiments to improve the combination. His undoubted election to use the invention, independently and commercially, over four years before applying for a patent, followed by at least two years of such use in the first machine, constitutes an abandonment thereof to the public. Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 255, 8 Sup. Ct. 122, 31 L. Ed. 141, 11 Notes U. S. Rep. 415; Eastman v. Mayor, etc., New York, 134 Fed. 844, 858, 69 C. C. A. 628. So that claim 1 furnishes no support for the charge of infringement.

We are of opinion, therefore, that the appellant's bill was rightly dismissed, and the decree, accordingly, is affirmed.