AMERICAN BALLAST CO. v. DAVY BURNT CLAY BALLAST CO.

(Circuit Court of Appeals, Seventh Circuit.    January 5, 1915.)

No. 2005.

1. PATENTS &#8984;328—VALIDITY—PRIOR USE—COAL CONVEYING APPARATUS.

The Simmons, Forgham & Bennett patent, No. 633,348, for a coal unloading and distributing apparatus for use in ballast burning, *held* void for prior commercial use of the apparatus in substantially its patented form for more than two years prior to the application.

2. PATENTS &#8984;81—PRIOR USE—EXPERIMENTAL USE.

Where a patented machine was publicly and commercially used for more than two years before the filing of the application, experiments made during that time for the purpose of strengthening and otherwise improving the machine as an operative device must be deemed merely incidental, and not as dominating the character of the use.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 104; Dec. Dig. &#8984;81.

Reduction of invention to practical use or operation as affecting patentability, see note to Excelsior Supply Co. v. Weed Chain Tire Grip Co., 113 C. C. A. 7.]

Appeal from the District Court of the United States for the Northern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit in equity by the Davy Burnt Clay Ballast Company against the American Ballast Company. Decree for complainant, and defendant appeals. Reversed.

Glenn S. Noble, of Chicago, Ill., for appellant.

Frank L. Belknap and Charles K. Offield, both of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

MACK, Circuit Judge. [1] This is an appeal from a decree holding letters patent No. 633,348 valid and infringed. The patent is for a "coal unloading and distributing apparatus for use in ballast burning," issued to Simmons, Forgham & Bennett, September 19, 1899, on an application filed December 23, 1898. The specifications and claims thereof in suit, numbered 1, 2, 3, 4, 7, and 9, do not require particular mention for the purposes of this opinion, inasmuch as the main question in controversy and the one on which our decision rests is whether or not the use made of certain machines from 1894 to 1897, more than two years before the filing of the application, was public or experimental, within R. S. § 4886 (Comp. St. 1913, § 9430).

The purpose of this slacking device was to transfer coal from a coal car to a hopper on a transfer car, and thence by a conveyer to a platform attached to the latter car. From the platform the coal would be shoveled by hand onto the fire. The process of making ballast from clay, of which this is one step, is more fully described in the opinion filed this day in case No. 2006 between the same parties. 220 Fed. 890.

The specific improvement was the substitution of machinery for the wheelbarrow in getting the coal from the coal car to the shoveling platform. The invention was in no sense pioneer. The inventors were officers or employés of plaintiff, which had long been engaged in the business of manufacturing ballast from clay. The conception of this apparatus was not the result of long or laborious experiments. As Simmons testified:

"The machine was conceived and planned at one sitting or one interview. * * * The machine was so obvious, being groupings of methods, mechanical methods, which we had already made use of, that the thought to turn it into a slacking device was spontaneous."

This meeting or interview of the inventors took place early in 1894. In the spring of that year one machine was built at railroad shops in Missouri in accordance with rough sketches and instructions from the inventors. After it had been tested out for a month in the yards, on tracks level and in good condition, it was sent out to be used on the temporary uneven tracks, where ballast burning was going on. A month later, two more machines were built at the same place and sent out in the fall of 1894 to be similarly used by plaintiff's predecessor.

While there is some conflict in the testimony as to the length of time the three machines were in actual operation, the patentees' own testimony establishes that all of them were used for from two to six months in each of the years 1894 and 1895, and in each case until the completion of the particular job in hand; that one of them was also at work in 1896 for several months, and another for many months both in 1896 and 1897; that, despite interruptions from time to time, this use

was continuous, open, and commercial; and that in every respect it was identical with plaintiff's use of the later machines in the regular course of their business of making ballast from clay.

The interruptions were due both to defects in the material, poor construction, or faulty relation of the parts, and also to entirely extraneous causes. The actual commercial use on the rough temporary tracks demonstrated weaknesses; these were readily overcome; breakages because of defects and strain were repaired; changes of various kinds were made; but it is apparent, even from the patentees' testimony, that none of the changes made, either in any of these original machines or in the later machines, as a result of the use to which the alleged experimental machines were put, had any relation to the invention itself. In other words, these first three machines, at the time they were sent out, were complete and commercially successful operative embodiments of the invention as set forth in each of the claims in suit, except that perhaps in two of them one element of two claims, the flexible bridge piece, was missing. This, however, was in the third machine from the time of its construction.

The three original machines were taken apart after the season of 1897; the parts were sent to plaintiff's factory at Kenosha, Wis.; some of them were used for other purposes, and others scrapped. This disposition of them was due, not to any impossibility of their further commercial use, but because plaintiff found it more advisable and advantageous to build larger and stronger apparatus. In so far as the use of the 1894 machines can properly be called experimental, it was for the purpose of determining, not the practicability of the invention, but the best device for its embodiment as to materials to be used, their arrangement, and construction. The only purpose of experimenting was to ascertain what material, wood, iron, or steel, for example, should be used in some of the elements, how the structure could best be braced and held in place, and by what relation of the parts the highest efficiency could be attained.

As the carpenter in charge of the manufacturing of these machines testified, it was only after they had found out that the very first machine would work that it was shipped out to be used. While he called this a "purely experimental" machine, and said that all three of them were built "to see if we could get a successful slacker," the evidence, far from supporting the contention that this use, extending over a period of from two to four years, was primarily experimental, is overwhelming that it was public and commercial in every sense; that in so far as it was experimental the testing was merely incidental; and, moreover, was directed solely to matters forming no part of the invention or the claims.

[2] The law is well established. The fact that the use was open and not secret would not of itself make the use public, if, as in this case, a real test could be made only in connection with the actual open commercial work. And if the experiments had been directed primarily to a testing out of the very thing invented to ascertain whether a machine embodying the conception would be commercially workable, such experiments might extend over more than two years, if additional time were really essential for this purpose. Elizabeth v. Paving Co., 97 U. S. 126, 24 L. Ed. 1000. But after an open use for more

than two years is shown, the burden of proving that it was purely or primarily experimental "by full, clear, unequivocal, and convincing evidence" is on the patentee. Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 8 Sup. Ct. 122, 31 L. Ed. 141.

As the court says in the Sprague Case:

"A use by the inventor, for the purpose of testing the machine, in order by experiment to devise additional means for perfecting the success of its operation, is admissible; and where, as incident to such use, the product of its operation is disposed of by sale, such profit from its use does not change its character; but where the use is mainly for the purposes of trade and profit, and the experiment is merely incidental to that, the principal and not the incident must give character to the use. The thing implied as excepted out of the prohibition of the statute is a use which may be properly characterized as substantially for purposes of experiment. Where the substantial use is not for that purpose, but is otherwise public, and for more than two years prior to the application, it comes within the prohibition."

Inasmuch as the invention embodied in each of the claims in suit was completely formulated, disclosed, and reduced to practice by the machines of 1894, and as these machines were publicly and commercially used more than two years before the application was filed, any experiments made during this time for the purpose of strengthening and otherwise improving the machine as an operative device must be deemed merely incidental and cannot save the claims in issue. Star Mfg. Co. v. Crescent Forge & Shovel Co., 179 Fed. 856, 103 C. C. A. 342.

The decree must be reversed, with directions to dismiss the bill for want of equity.