WENDELL et al. v. AMERICAN LAUNDRY MACHINERY CO. et al.

(District Court, E. D. Pennsylvania. January 23, 1917.)

No. 1451.

1. PATENTS ☞81—ANTICIPATION BY PRIOR USE—MEASURE OF PROOF.

The issuance of a patent gives to the patentee the prima facie right to the invention, of which he cannot be deprived on the ground of prior public use of the same machine by others except upon clear evidence.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 104.]

2. PATENTS ☞83—VALIDITY—"ABANDONMENT" OF INVENTION.

The fact of prior public use of a machine with permission of the inventor prior to the application for a patent may justify a finding of abandonment, but such public use for a period of more than two years

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

prior to the application is itself an "abandonment" in fact, unless such use is shown by clear, unequivocal, and convincing evidence to have been for experimental purposes only.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 108, 109.

For other definitions, see Words and Phrases, First and Second Series, Abandonment.]

3. PATENTS ⬦⟶328—VALIDITY—PRIOR PUBLIC USE—IRONING MACHINE.

The Wendell patent, No. 1,137,438, for an ironing machine, is void for prior sale and public commercial use of the machines for more than two years prior to the application.

In Equity. Suit by Theresa S. Wendell, administratrix, and the Willey Company, Incorporated, against the American Laundry Machinery Company and the Locust Laundry Company. On final hearing. Decree for defendants.

J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., for plaintiffs.

Harold E. Stonebraker and Church & Rich, all of Rochester, N. Y., for defendants.

DICKINSON, District Judge. This proceeding involves the validity and infringement of letters patent No. 1,137,438, issued April 27, 1915, to the plaintiff as administratrix of the deceased inventor Fred. C. Wendell. The patent is for an improved ironing machine. A discussion of the many features of this case, which might otherwise be called for, is rendered unnecessary by the finding of one fact. The application for the letters patent was filed February 1, 1913. The fact referred to is that machines embodying all the possibly inventive features of the patented machine had been commercially sold and were in public use following these sales for more than two years prior to the date of application for letters patent.

The difficulties against which the plaintiff struggled in the first place to secure the issue of these letters patent and since to assert their validity against other users are such as to make a strong appeal to the sympathies of any one whose duty it is to find the facts, and because of this predisposes the trier of the facts to make every allowance for these difficulties, and not to exact of her a higher measure of proofs than one so situated could be reasonably asked to furnish.

A proper first inquiry is into what the standard of the strength of such proofs is, and more particularly upon whom the burden of proof rests. To establish clearly the proper application of the adjudged cases and to get a firm grasp of the controlling principles of law which are to be deduced from the cases, certain well-defined distinctions must be kept in mind. The existence of a machine or device prior to the date of application for letters patent may have any one of several different bearings upon the question of the validity of the patent when issued. . One of the bearings may be upon the question of invention, or, more accurately speaking, upon the novelty of the device in the sense of priority of invention. The patentee must show a machine or other product of his brains which not only discloses invention, but the in-

vention must have been his own, and, in addition to that, he must have been the first inventor. If therefore a machine is shown to have been in existence before the time the patentee conceived of the invention involved in the construction of it, the fact of this existence would destroy the validity of the patent because it would negative the thought of novelty in the patented machine. This would be true whether this fact of existence was widely known or even known at all. Although the fact may appear that the patentee invented a machine and it possessed novelty and utility and was otherwise patentable, if the patentee had previously to his application permitted the constructed machine to pass into such general use as that it could be held that he had abandoned it to the public, his letters patent would be invalidated. The policy, or at least part of the policy, which is back of this provision of the law, is that an inventor cannot give to the general public the right of every one to make, use, or vend his machine, and thus promote and encourage them to go into an extended manufacture of and investment in it, and when a profitable market is thus created for the machine to step in and monopolize the whole of it.

[1] A third bearing of such prior existence of a patented machine arises out of the provision of the patent law that if the patentee desires to assert the exclusive right to make, use, or vend his machine, he must make his application for letters patent not later than two years before the time he makes commercial use of it or puts it into public use. Different principles of law apply to each of the three conditions of fact which we have instanced. The issuance of the letters patent, supported by the oath of the applicant that he is the first inventor, raises a presumption of the truth of that fact, and gives him the prima facie right to the invention which he claims. When therefore his letters patent are attacked by the averment of the fact that he had been anticipated in the field of invention and that some one else had produced the same patented machine before he conceived the idea of constructing it, the rule is that he cannot thus be deprived of the right conferred upon him by his letters patent, unless the evidence of the prior existence of his patented machine is so clear as to produce a strong conviction of the truth of the asserted fact in the mind of the tribunal passing upon the question, and all doubts arising from the evidence are to be resolved in favor of the patentee. It is sufficient to cite in support of this principle the cases of Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L..Ed. 657; Deering v. Winona, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153.

[2] The second and third instances referred to are in one sense alike, as each may result in a finding of abandonment to the public. There is, however, this statutory distinction: The fact of public use prior to the application may justify a finding of abandonment, but public use existing for a period of more than two years before the application is itself an abandonment in fact. There is, because of this distinction, a difference in the legal principles applicable. That difference is that he who asserts abandonment because of a public use within the two-year period must assume the burden of establishing, not merely the fact of public use, but the essential fact of abandonment involv-

ing the element of intention on the part of the inventor. Where, however, we have the fact of commercial sale, or the fact of public use for more than the two year period, then the objecting party is held only to the burden of proving the fact of commercial sales or of public use beyond the two year period, and when this fact is established the inference follows as a matter so much of course as that it may be said it follows as a conclusion of law. This conclusion can only be escaped by the inventor showing that the use was merely experimental, and for the purpose of subjecting the machine to a practical test of its utility, or otherwise accounting for the use of the machine in such a way as to destroy the value of the evidence of the use as predicating abandonment. The burden, therefore, here shifts to the inventor, and the fact of a commercial sale and of public use beyond the two-year period requires of the inventor to make his exculpating evidence in the language of the adjudged cases "full, clear, unequivocal, and convincing." A subsidiary but very helpful principle of the law to be here applied is that the inquiry is to be directed to the sale or to the use. Was it primarily for testing or experimental purposes, and was any sale or any use merely the incidental accompaniment of the act, the main motive and purpose of which was to experiment or to apply a test, or was the main and primary purpose to commercially profit from the sale or use, and was whatever benefits flowed from it as a test or experiment the incidental accompaniment? Many cases might be cited in support of these principles. It is sufficient to refer to Swain v. Holyoke, 109 Fed. 154, 48 C. C. A. 265; Id., 111 Fed. 408, 49 C. C. A. 419; Egbert v. Lippmann, 104 U. S. 333, 26 L. Ed. 755; Smith v. Sprague, 123 U. S. 249, 8 Sup. Ct. 122, 31 L. Ed. 141; American v. Davy, 220 Fed. 887, 136 C. C. A. 453.

[3] The situation of the plaintiff in this case, as has already been stated, has in it that which makes a very strong appeal to any one to make sure that she has accorded to her all her rights. However strong this appeal, it nevertheless cannot overcome the duty to do justice to all whose rights are concerned. The fact of sales of this patented machine two years prior to the date of her application is too well established by the evidence to be doubted. That the machines thus sold were essentially, so far as involves the claimed inventive features of the patented machine, substantially identical with the machine as patented, likewise cannot be doubted. The testimony of the president of the licensee of the patentee makes this clear. On the face of the pleadings he was testifying against his own interests. The fact would seem to be that there is a considerable sum of money, the ultimate payment of which is dependent upon the final disposition of this case. Just how this fact on a balancing of the financial interests of the witness leaves him is not disclosed; but, independently of this, the documentary evidence in the case, and the absence of any clear-cut statements even, to the contrary, all go to the establishment of the fact that the machines as sold to the trade prior to the two-year period and the machine as patented differ, if they differ at all, only in the bettering of certain mechanical parts, and do not differ in any of the features in which invention is claimed to be shown. Moreover, the machines as sold and

as used were sold as operative machines, and the work done by them justified the claim of merit then made and compels the finding that they were workable.

Counsel for plaintiff have made a very laudable effort to find some principle of law upon which the validity of this patent could be sustained. Supplementing their efforts, we have made a careful examination of all the cases to which we have found reference, and a close analysis of each one of them, and have been unable to find a single case which supports the contention of the plaintiff. There are cases, of course, of which Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, is an illustration, which support the proposition that a purely experimental or testing use, although extending over a number of years, would not justify a finding of abandonment as a fact nor constitute a public use within the meaning of the two year provision of the patent law. This case recognizes the distinction of which it is in itself a good illustration between a public use and a use by the public. There the use was of a pavement which had been laid in a turnpike or public highway. It was, of course, used by the public traveling that highway, and was laid there for the very purpose of being subjected to such use because in no other way could the merits of a road pavement be subjected to the practical test of travel. The finding there was that, although the pavement was down for a considerable length of time, the circumstances and surrounding conditions of its construction and of its use compelled the finding that this was neither an abandonment to the public of the invention nor a public use within the meaning of the statute. The difference in the state of facts there and in the instant case forces the conclusion that the ruling there is not authority for a like ruling here, but, on the contrary, is an authority for the opposite ruling.

There are other defenses to the validity of this patent which are as strongly urged and upon which as much stress and insistence is laid as upon that branch of the defense which we have discussed. This defense, however, goes to the whole merits of the bill and seems to be so clearly and fully established that a discussion of other matters of defense would seem to be a waste of time.

The bill of complaint is dismissed, with costs, and a decree to this effect may be submitted.