## MIEHLE v. SCOTT.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

1. The completion of a tripping mechanism forming part of a multi-couple, multi-revolution printing machine, and its manipulation by hand,—which is the combination of co-ordinating elements for which a patent is sought,—does not amount to a reduction of the invention to practice, although such mechanism contains the new element in the patentable combination, where the object of the invention is control of the impression cylinders, that is, the function of the tripping device in the machine is to cause the impression cylinder to act in a predetermined manner, if, at the time of the test of the tripping mechanism, the rods connecting it with the cylinders were not on the machine, so that it could not be definitely determined whether the cylinder would trip in proper sequence.

2. That a device consisting of a combination of elements designed to produce a desired result was perfected and ready for operation on a certain date does not constitute a reduction of the invention to practice at that time, where it is not so simple in character as to demonstrate its usefulness without a test. (Following *Sydeman* v. *Thoma,* 32 App. D. C. 362.)

No. 809. Patent Appeals. Submitted January 13, 1913. Decided February 3, 1913.

Vol. XL.—2.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Messrs. Brown, Darby, & Hopkins* and *Mr. C. C. Linthicum* for the appellant.

*Mr. Axel V. Beeken* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

This appeal involves a decision of the Commissioner of Patents in an interference proceeding awarding priority of invention to Isabella Scott and David John Scott, appellees, the senior parties, who filed as executors of Walter Scott.

The invention is expressed in the following count:

"In a multi-couple, multi-revolution printing machine, the members of which are adapted to print on the same side of the sheet, the combination with the members of two adjacent printing couples, of automatic means for periodically tripping and untripping the members of each couple, interrupting means for the automatic means of each couple normally inactive, but adapted to act sequentially during successive cycles of the machine, when properly positioned, and means for positioning both of said interrupting means during the same cycle of the machine."

We quote the following from the opinion of the Acting Examiner of Interferences: "In mechanism of this character two sheets receive impressions at the same time. The latest fed receives its first impression while the one previously fed receives its second impression. Should the second sheet be fed crooked, or should the feeder fail to feed it at the proper time, the type forms in the first printing couple would print on the pad of its cylinder, and this ink would soil the back of the next few sheets fed in. It is therefore desirable, under such circumstances, to cause the first cylinder to remain out of impression

position, but to allow the second couple to give its impression to the sheet previously fed before it, in turn, is thrown out of action. The invention here involved, therefore, consists in an arrangement of mechanism which will cause the first couple to be thrown out of action at one time and the second couple to be thrown out automatically at a later time. To produce this result the parties hereto have evolved their respective devices. These are specifically quite different, due to the fact that they are applied to presses widely differing in general design."

While the devices of the two parties specifically differ, it is not disputed that each responds to the issue. Each of the three tribunals of the Patent Office has ruled that Scott was the first to conceive the invention, and each has ruled that Miehle's proofs fall short of establishing reduction to practice by him prior to Scott's filing date. The evidence introduced in behalf of Scott on the question of priority of conception is so clear and convincing, and the review of that evidence by the Patent Office so satisfactory, that we shall accept the finding thereon, without further comment. In the absence of a showing of diligence by appellees, the real question in the case is whether Miehle has sustained the burden resting upon him of proving, by a preponderance of evidence, that he reduced the invention to practice prior to the filing date of Scott, December 19, 1905.

It appears that some time in October, 1905, Miehle completed a full-sized tripping mechanism of the particular type devised by him, mounted it in a frame, and manipulated it by hand. He now contends that, as the new element in the patentable combination set forth in the claim of the issue was presented in this early tripping mechanism, the test then made was sufficient to demonstrate operativeness; hence, he insists, it amounted to reduction to practice. We agree with the Patent Office that this position is untenable. Appellant is not seeking a patent on this tripping mechanism; he is seeking a patent on a combination of co-ordinating elements; and, unless that co-ordination exists, patentability of the combination is lacking. There must be harmony of action between the members of the printing couples and the tripping device, since the very object of the invention

is control of the impression cylinders; that is, the function of
the tripping device in the machine is to cause the impression
cylinders to act in a predetermined manner.  At that time the
rods connecting the tripping mechanism with the cylinders were
not on the machine.  As the absence of those rods prevents the
tripping of the cylinders, it is clear, as found by the Patent
Office, that it could not be definitely determined whether the
cylinders would trip in proper sequence.  That the invention
was complete was not, therefore, then demonstrated.

Appellant further contends that, regardless of whether the
October experiments with his tripping device constituted reduc-
tion to practice of the combination of the issue, he is entitled to
a date at least as early as December 6, 1905, because on that
date the tripping mechanism was connected to the cylinders
and the transfer cylinder was mounted in place.  In other words,
while the evidence will not justify a finding that appellant's
machine was operated prior to appellees' filing date, he neverthe-
less insists that his machine had been perfected prior to that
time, and that, in its then condition, it was capable of useful
operation, and hence that he is entitled to be considered the first
to reduce the invention to practice.  Obviously, this invention
does not involve a device so simple in character as to demonstrate
its own usefulness without test.  Sydeman v. Thoma, 32 App.
D. C. 362, 373.  On the contrary, as found by the tribunals of
the Patent Office, and as demonstrated by the evidence in the
case, it is one that required careful experimentation and test
before its capacity for useful operation could be determined;
that is, before it could be known that it was capable of pro-
ducing the desired results.  In the circumstances of this case,
until this test occurred, the reduction to practice was potential,
and not actual.  It could not be known that the invention was
complete until the ability of the combination of elements to
produce the desired result had been demonstrated.  In Hall v.
Macneale, 107 U. S. 97, 27 L. ed. 369, 2 Sup. Ct. Rep. 73,
the invention related to "improvement in connecting doors and
casings of safes," consisting of conical or tapering arbors in
combination with two or more pieces of metal in the doors and

casings of safes and other secure receptacles. It was there contended that the invention was anticipated by a prior similar device. This contention was attempted to be met with the suggestion that the use of this prior device was experimental merely. The court declined to adopt this suggestion and ruled that the invention was complete in this prior device. The court said: "The safes (containing the prior device) were sold, and, apparently, no experiment and no experimental use were thought to be necessary." In other words, the device there involved was of such a character that it demonstrated its own efficacy. "It was capable," said the court, "of producing the results sought to be accomplished." But that case materially differs from the present. Here it would have been impossible, even for those skilled in the art, to have determined with certainty whether the machine which appellant assembled prior to appellees' filing date would produce the expected result without actual trial. Until such a trial took place, it could not be known whether the invention was complete. "If the question relate to a machine," said the court in *Coffin* v. *Ogden,* 18 Wall. 120, 124, 21 L. ed. 821, 823, "conception must have been clothed in substantial forms which demonstrate at once its practical efficacy and utility. . . . Until his work *is done,* the inventor has given nothing to the public."

*Agawam Woollen Co.* v. *Jordan,* 7 Wall. 602, 19 L. ed. 181, contains nothing inconsistent with what we have said. There it was sought to overthrow a patent for an invention that had gone into universal use, on the ground that the patentee was not the real inventor. No doubt whatever existed that he was the first to give physical embodiment to the invention, nor was it claimed that he was not the first to reduce to practice. With these facts in mind, the court said: "The settled rule of law is, that whoever first perfects a machine is entitled to the patent, and is the real inventor, although others may have previously had the idea and made some experiments towards putting it in practice. He is the inventor and is entitled to the patent who first brought the machine to perfection and made it capable of useful operation." In the present case, as previously suggested, it was not demon-

strated prior to the filing date of appellees that appellant's device was complete and capable of useful operation. The subsequent demonstration could not deprive appellees of priority of reduction to practice, since that question must be determined upon the facts existent at the time of such filing. It may well be that, had the two devices been specifically the same, the constructive reduction to practice of one would have been overcome by the prior physical embodiment of the other; but such is not the case before us. Moreover, inasmuch as he who first conceives an invention and is thereafter diligent is entitled to priority over him who is the second to conceive, but the first to reduce to practice, it is obvious that the court, in the *Agawam Case,* was speaking with reference to the particular circumstances of that case.

The decision is affirmed.               *Affirmed.*

Mr. Justice VAN ORSDEL did not sit with the court in the hearing and determination of this appeal.