TRIMPAK CORPORATION v. SCHENEC-TADY LUMBER CO., Inc., et al. (IRO-QUOIS MILLWORK CORPORATION, Intervener).

SAME v. RUTLAND (IROQUOIS MILL-WORK CORPORATION, Intervener).

SAME v. ATWATER (IROQUOIS MILL-WORK CORPORATION, Intervener).

Nos. 3084–3086.

District Court, N. D. New York.

July 10, 1939.

Charles J. Holland, of New York City (Alden D. Redfield, of New York City, of counsel), for plaintiff.

John F. O'Brien, of Albany, N. Y. (William H. Pattison and A. S. Pattison, both of Washington, D. C., of counsel), for defendants.

COOPER, District Judge.

This is a suit for infringement of patent No. 1,849,412 issued to Harry J. Strong and assigned to the plaintiff.

The patent was applied for on December 4, 1926, and issued March 15, 1932. The subject of the patent is: "Trim for Windows, Doors Etc."

The patent has four claims, all of which are charged to be infringed.

They are as follows:

"1. As an article of manufacture, prepared trim elements in a package containing a predetermined assembly of trim parts of unlike form and dimensions adapted to trim one of the dimensions of a wall opening and so arranged as to combine with other assemblies of trim elements of the other dimensions to provide finished trim for any given size of opening.

"2. As an article of manufacture, prepared trim in a package comprising a selected number of units of predetermined unlike form and dimensions adapted to trim one of the dimensions of a wall opening and carrying indicating means; any one of said groups of units being thereby adapted to combine with the units of another similar group to provide finished trim for any given size of opening.

"3. In trim for wall openings comprising trim elements adapted to dress the horizontal dimension of such openings, and other trim elements adapted to dress the vertical dimensions of said openings, a bundle of elements of trim for addressing one of said dimensions of a single opening, said bundle being adapted and arranged to combine with any one of a plurality of trim elements for dressing the other dimensions of such openings to furnish complete trim for any size of wall opening.

"4. A bundle either of vertical or horizontal elements of trim adapted to interchange with other bundles of the opposing dimension to effect complete dressing of any wall openings of any size in the said opposite dimension."

The defenses are that the patent is invalid because:

1. Not involving invention in view of the prior art.

2. The said Harry J. Strong was not the originator or first true inventor of the alleged invention.

3. That the patent and the claims thereof do not describe the alleged invention as required by law in such full, clear and ex-

act terms as to enable any person skilled in the art to use the same.

4. That the alleged invention is defined in the claims in such broad language as to define an invention broader than the alleged invention.

5. That the alleged invention is inoperative and devoid of utility, that the claims do not define any structure, method or article of manufacture but are for statements of function only and therefore void.

Separate suits were brought against the three defendants for the sale of bundled interior trim bought by them from the Iroquois Millwork Corporation. By agreement between counsel, the three suits were tried as one since the alleged infringement is the same in each case.

The Iroquois Millwork Corporation applied for leave to intervene and to be made a party defendant in each suit. The application was granted and the Iroquois Millwork Corporation was made party defendant in each suit and filed a counter claim in the form of a demand for the Declaratory Judgment.

Infringement is denied, but if the patent is valid, infringement is clear.

The patent states that the invention "relates to the preparation of decorated woodwork used in dressing windows and door openings and other openings in building walls."

The patent claims that previous methods were wasteful and that many plans had been proposed unsuccessfully and failed to obviate the great loss of time and material incidental to the cutting of the trim for each particular window either at the factory or at the window or door to be trimmed.

After reciting that wall openings are standardized as to size in the different states, the patentee says: "I have found that a system of Units consisting of assemblies of cut vertical parts and separate assemblies of cut horizontal parts of windows, doors and transoms or other openings may be devised so that relatively few types of Units, not exceeding twenty-seven types, may serve, by reason of the combinations of which they are capable, to form far more than 150 different combinations of windows:"

Upon the trial, the inventor describes his alleged invention thus: "This unit is not designed for any particular window or door but is designed to dress, in combination with other units, any window or door of standard size in the country."

The two bundle method consisted of putting vertical elements in one package and horizontal elements in another package and it is claimed by plaintiff that by the use of ten bundles containing vertical and 17 bundles containing horizontal elements, or a total of 27, these elements through permutations and combinations could be adapted to the trimming of wall openings of upward of 150 different sizes.

The chief defense is that the patent is void as not involving invention or patentable novelty in view of the state of the prior art, and that it required no invention to produce the alleged invention of the patent in suit and that the alleged invention does not differ in any patentable way from the practices long known and used and described in prior publications relating to the bundling of frames.

The application was long considered in the Patent Office, a period of nearly six years elapsing between application and issue of patent.

The Patent Office examiner having charge of this application rejected the claims then sought, on February 11, 1927.

On October 11, 1927, the applicant filed a so-called amendment submitting new and additional claims. The applicant filed a brief in support of these new claims and also filed the affidavits of George A. Lenarton and Roland C. Cranwell, who will later be referred to.

About January 19, 1938, the Examiner reported that the then Claim 14 was allowable and claim 12 might also be allowable if certain corrections in the amendments were made.

Thereupon the plaintiff sent out communications to the trade, giving notice of the allowance of certain claims of the Strong application and notifying those who were manufacturing or selling trim in the two bundle method to desist.

On February 2, 1928, Strong amended his application in the effort to have the claims then numbered 12, 13 and 14 allowed.

About this time a petition was filed in the Patent office opposing the grant of a patent to the applicant and moving for a public use proceeding. The petitioners called the attention of the patent office to the 1920 catalogue of the Curtis Company of Clinton, Iowa, entitled "Architectural Interior and Exterior Woodwork."

On March 3, 1938, the Examiner rejected all claims based chiefly on the Curtis Company Catalogue.

This catalogue is in evidence on this trial as Plaintiff's Exhibit 17 and Defendant's Exhibit E.

The Patent Office called attention of the petitioners to the fact that if further action than protest were desired it would be necessary to file a petition for a public use proceeding.

After the rejection of all claims by the Examiner on March 3, 1928, the applicant filed another amendment and a brief or argument and submitted affidavits of one Whitney and a further affidavit of Roland G. Cranwell. Applicant added two more claims to his application.

The Examiner rejected these claims also.

Appeal was then taken to the Board of Patent Appeals.

The Board reviewed the case upon the record before the Examiner.

The decision reversing the Patent Examiner and directing the patent to issue was made on August 5, 1930.

Upon Appeal, the Board of Patent Appeals said this was a close case.

The Board, however, reversed the examiner and granted the patent.

The record on the appeal shows that references relied upon on the Appeal were: "Architectural Interior and Exterior Woodwork," The Curtis Company, Clinton, Iowa, Copyrighted 1920, and Crosset and Western Lumber Company's Catalogue, entitled "Pacific Coast Standard Frame Catalogue No. 921." dated September 20, 1922.

The Board of Patent Appeals make these significant statements in the opinion, reversing the Examiner:

"The brief points out, and the affidavits of Cranwell supplement applicant's contention, that this system of framing is not a practical success.

"We believe that there may be some force in Appellant's argument that the use of this method with frames was so unsatisfactory that even if the thought of its use with trim occurred, the trial with frames led away from an experiment with trim rather than encouraged trial with this material."

The applicant was the only party before the Board of Appeals. No one outside of the patent office had any opportunity to prove, as defendants have proved here, that bundling frames in the two package method was a success instead of being "not a practical success."

Other misconceptions of the Board of Patent Appeals are urged by the defendants.

In the Boards opinion it is stated that frames vary in many additional respects beside length, while trim varies only as to length. From the evidence, this is error.

Further the Board said: "By this arrangement it is possible for a dealer to very materially reduce the number of packages it is necessary to carry in stock to provide trim for any particular type for *all standard wall openings.*"

It is clear from the evidence on this trial that the patentees two bundles of trim will not trim a door nor will they trim a window opening of a brick or stone wall.

Upon this trial the defendants had an interest in showing, and an opportunity to show, the state of the prior art and that this method of bundling frame has been in fact a practical success. From which the defendants reasonably urge that the application of the like two bundle method to the packing of the analogous and closely related trim did not involve invention.

Before the patent was issued Petition for Institution of Public Use Proceedings were filed. The Acting Commissioner of patents thereupon instituted Public Use Proceedings.

Hearings continued at various times to January 15, 1932.

It is claimed by the plaintiff that all issues raised here were raised before the Examiner who has charge of the Public Use Proceedings.

The Anderson Catalogue of 1917, the Bradley-Miller F. I. Catalogue, the Curtis Company catalogue were before the Examiner with many more and the Patent Office proceedings prior to the Public Use Proceedings including the decision of the Board of Patent Appeals were before the Examiner.

On these proceedings, the Examiner could only consider whether or not the petitioners proved prior use of a system of bundling interior trim which was identical with the system defined in the claims of the application allowed by the Board of Patent Appeals. The Examiner could not decide the question of the patentability of

the claims allowed by the Board of Patent Appeals for he was bound by that decision.

Indeed, the examiner expressly stated that he was bound by the Decision of the Board of Patent Appeals to such extent that if the catalogues offered did not describe trim bundled in the two bundle method, he could not hold them to be prior publications. The only point upon which the patent examiner could pass was that of prior use of trim in the two bundle method.

Since none of the catalogues or evidence before him showed prior use of trim in the two bundle method, he felt bound by the decision of the Board of Patent Appeals that the invention was patentable in the absence of any showing of prior use of trim in the two bundle method and directed the issue of the patent.

No appeal lay from such decision.

So the question remains whether the two bundle method of packing trim is invention in view of the voluminous showing of the two bundle method of packing frames.

There is also much evidence on this trial, not before the patent office, that the two bundle method of packing frames was a success and not a failure, as the Board of Patent Appeals was led to believe as shown by the above questions from their decision.

By stipulation of parties (Def.Ex.C) it appears that the Bradley-Miller Company catalogue F1 (Defendants Ex.CA) was published prior to 1924; that The Anderson Lumber Company catalogue entitled: "Frame up in ten minutes" (Defendants Ex.C.B.) was published in 1917; that the Anderson Lumber Company Catalogue entitled "Genuine Northern White Pine Window Frames that Are Easy to Handle" was published in 1924.

This stipulation also states that the window frames bundled in the manner shown in the Bradley-Miller catalogue were sold extensively in Michigan and other states from 1924 continuously down to the date of the stipulation and that window frames bundled in the manner shown in the Anderson catalogues were sold extensively in Minnesota and various other states from 1917 continuously down to the date of the stipulation.

In the Anderson Catalogue of 1917 appears a statement that by interchanging 21 bundles of frame, 121 sizes can be made by permutations and combinations.

While the Anderson catalogues of 1923 and 1924 do not give the same table shown in the catalogue of 1917, they do suggest to the dealer how he can supply frames for almost all the requirements of his trade from a limited stock with explanation and illustrations of the manner of using the limited number of two bundle packages to supply many different sized frames by permutations of the bundles.

In the Bradley-Miller Catalogue is graphic illustration and explanation of the two bundle method of bundling window frames and a description of the elements which go into the vertical and horizontal bundles. Thus, the defendant contends, and not without force, if trim instead of frames were in the bundles, the bundles would be very similar to the bundles of trim claimed to constitute the Strong Invention.

The defendants showed on the trial that the only manner of sales of frames by the Anderson Company was by the two-bundle method. The sales of such frames are given in the evidence from 1917 to 1937. The sales from 1917 to 1937 were 10,223,385 frames, 20,446,772 bundles.

1917 was the year the first Anderson catalogue in evidence was issued. This catalogue was apparently the first showing of the sale of frames by which 11 sizes or 21 bundles of Anderson Frames could by combination or permutation be made to supply any one of 121 different sized standard window frames.

The sales in 1917 were 243,634 frames or twice that number in bundles. These sales, with some slight recessions in some years, increased to 970,405 frames in 1928 or 1,940,810 bundles.

In 1929, the first year of the depression there was loss and in each of the years to and including 1934. But by 1937, the sales had returned to 570,500 frames or 1,141,000 bundles.

The defendant also showed the number of window and door frames sold in two bundle package by the intervening defendant, Iroquois Millwork Company from 1926 to 1937, showing also sales of frames, not by the two bundle method. Those sold under the two bundle method were 407,220 frames and by all other than the two bundle method only 867 during the years from 1926 to 1937 inclusive.

There was the same increase to 1929, then a decrease to 1934 and then a gradual increase.

The sales from 1926 to 1937 inclusive were,

315,237 window frames for double sash frame.

41,032 window frames for single sash frame.

50,951 door frames.

The number of bundles sold is twice the number of frames.

Those figures show clearly that the sale of window frames in the two bundle method was a success and not a failure and that the Board of Patent Appeals was misled by dependence on affidavits and was without proof of the actual facts showing success.

It is interesting to note that in the American Lumberman's Magazine of January 21, 1922 (Part of Defendant's Exhibit D), advertising Anderson frames, permutations and combinations are shown thus. From a small stock of 11 sizes or 21 bundles of Anderson's Standard Window Frames, the dealer can supply a customer with any one of 121 different sized window frames.

The advertisement tells by means of tables the sizes of bundles which a dealer should carry to be able to make up the 121 different sizes of frames.

In the Patent, Page 2, Lines 31 to 73, it is stated that ten packages of vertical trim and 17 packages of horizontal trim is capable of combinations adapted to the trimming of 170 different sizes (of wall openings).

The similarity of these two showings is significant.

On the trial the plaintiff produced a letter from the Curtis Company of Clinton, Iowa, dated May 17, 1926 (P.Ex. 18). This letter was used in the Public Use proceeding in the patent office and advised its representatives that it was no longer selling frames in the straight two bundle method but on the "basic frame method."

The witness, Cranwell, who received the letter admitted on examination that he did not know whether the Curtis Company sold frames by the two bundle method after the receipt of the letter of May 17, 1936. It also appeared that for some time the Curtis Company purchased from others most of the frames sold.

The fact that one or more large dealers may have abandoned the two bundle method of packing frames and taken up some other method has little weight compared with the practice of the trade as a whole.

This letter and the testimony of the same witness probably had much weight with the Board of Patent Appeals when in 1932 it granted the patent after adverse finding by the examiner.

The witness Cranwell, now employed by a distributor did not sell frames by the two bundle method.

It appears, therefore, that the Board of Patent Appeals did not have before them full and accurate information of the success of the two bundle method of packing frames for wall openings and the presumption of invention and validity of the patent is greatly weakened.

■ Walker on Patents, 6th Ed., page 170, states that precise identity is not necessary to constitute prior public use, but that the prior public use has been established if the two devices are substantially the same, citing Hall v. Macneale, 107 U.S. 90, 2 S. Ct. 73, 27 L.Ed. 367; International Tooth-Crown Company v. Gaylord, 140 U.S. 55, 62, 11 S.Ct. 716, 35 L.Ed. 347.

■ Defendant cites many authorities to support the view that the exercise of ordinary mechanical skill does not constitute invention but there is no need of mention of authorities on that point.

Plaintiff also cites cases where the patented device, thing or method was held not to be the application of mere ordinary mechanical skill, such as Diamond Rubber Company v. Consolidated Rubber Tire, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527.

But these cases depend upon their own particular facts and are applicable here only in principle and the principle is not contested.

■ The essence of the invention seems to be that the applicant took the method successful then and ever since in practice of bundling window frames in two bundles which with permutations and combinations enabled about 121 different sized standard frames to be built and applied the method to bundling trim for the same windows.

While it had not before been done, neither had putting out the two bundle method of window frames been long in vogue.

It was not an inspiration, a feat of genius, but the exercise of ordinary mechanical skill in applying to window trim the method theretofore, but not for a long time, applied to window frames.

The conclusion is that the two bundle method of packing trim for which the patent was issued did not involve invention and the patent is invalid.

In view of this conclusion it is not necessary to pass on any other of the defenses.

The bill of complaint is dismissed with one bill of costs distributed to the four defendants.

Decree may be entered.