Johnson, Chief Judge,
delivered the opinion of the court:
This is an appeal from a decision of the Board of Appeals of the United States Patent Office, rejecting claims 1-3 and 7-10, the only-remaining claims in appellant’s application for a “Tapered Shim.” Claims 1-3, 7 and 9 were rejected as readable on tapered shims which were placed in public use by both appellant and one Allen more than one year prior to the filing date of appellant’s application; claims 8 and 10 were rejected as barred by the public use of appellant’s shim in view of the prior art.
The following claims are representative of the claims on appeal:
1. A bearing shim adapted to be placed under a shaft bearing and formed of shim stock, said shim being tapered from the center to both edges thereof.
8. A shim for causing a shaft bearing which has been worn out-of-round to reengage its shaft uniformly, said shim being tapered from its central portion toward two opposite edges thereof, comprising pieces of foil of different lengths laminated detachably together in pyramid formation, having a maximum thickness adjustable by detaching part of the foil and approximating the out-of- *848 roundness of a worn bearing for a crankshaft or the like to be journaled in the bearing, and adapted to curve crescent-like between the back of a worn shaft bearing member and a semi-cylindrical support for the back of the bearing member.
The invention relates to a shim to be used to compensate for wear of bearings such as those at the crankshaft end of an automobile engine connecting rod. The shim is used in conjunction with the bearings, both the shim and the bearings being held in place about a crankpin by means of a bearing cap which is bolted to the end of a connecting rod. To compensate for uneven wearing of the bearings, the shim is tapered from its center outwardly toward each end thereof. The shim may be either of unitary construction (claims 1-3, 7 and 9 are readable on such a structure) or may be constructed of laminations of progressively shorter length piled upon one another in pyramid form and de-tachably adhered together (claims 8 and 10 read on this structure).
The reference relied upon is:
Yordon, 1,591,205, July 6, 1926
The Yordon patent discloses a laminated bearing shim from which laminae may be removed to adjust its thickness.
As aforesaid, the board’s rejection was based primarily on the public use of the structures defined in the claims on appeal. The board adequately presented the background of this proceeding as follows:
The instant application was involved in an interference No. 83,587, Blaisdell v. Allen v. Cocklin, on a single count wbieb was identical with claim 1 reproduced above. Appellant and Allen took testimony but Oocklin did not. Priority was awarded to appellant by the Board of Interference Esaminers and the decision was affirmed by the Court of Customs and Patent Appeals on appeal by Allen. During the interference Cocklin urged the Board of Interference Examiners to direct the attention of the Commissioner, under Buie 259, to the fact that public use had been found on the basis of the testimony by appellant and Allen. This the board declined to do. On the appeal by Allen from the award of priority to appellant the court stated that the question of public use was not before it.
When the Board of Interference Examiners refused to recommend that public use proceedings be instituted, Cocklin filed a petition to the Commissioner requesting that this be done. Action on the petition was held in abeyance pending termination of Allen’s appeal to the court. After the decision by the court, the Examiner was directed by the Commissioner to conduct public use proceedings. Neither appellant nor Allen took any additional testimony but stood upon the testimony taken in the interference proceeding. * * *
The C. C. P. A. decision referred to above was decided by this court on March 18, 1952, and is reported as Allen v. Blaisdell et al., 39 C. C. P. A. (Patents) 951, 196 F. 2d 527, 93 USPQ 428.
The board considered in detail the evidence and testimony relating to the alleged public use of a unitary shim by appellant and a laminated shim by Allen for a period greater than one year prior to the *849 filing of appellant’s application. In tlie view we take of this case, it will not be necessary to review or consider the facts relating to the alleged public use of the Allen shim.
Appellant does not dispute the propriety of combining the Yordon teachings with the structure embodied in the tapered shim found by the board to have been in public use by him for more than the statutory period. Thus, the sole issue in this case concerns itself with public use.
The board set forth the facts relating to appellant’s prior use, which facts are undisputed, as follows:
The testimony in the interference shows that a man by the name of George A. Mitchell operated a used-car business and employed appellant to do mechanical reconditioning work on cars that were to be sold. One of these cars was a Plymouth which was sent to appellant’s shop because of worn bearings. With Mitchell’s knowledge appellant installed handmade tapered one-piece shims in this car on an experimental basis and without charge to Mitchell. The shims were made by hand-grinding solid pieces of shim material to obtain the necessary taper from the center toward the side edges. This installation was made about November 1934. * * * This car was sold by Mitchell with a mechanical guarantee. Appellant kept track of the Plymouth for about four months after installation of the shims and was satisfied that they were effective for their intended purpose. * * * When the car was sold, the purchaser was not told of the presence of the shims. * * *
Appellant in 1936 also experimentally installed his tapered shim without charge in an Oldsmobile owned by Mitchell which had loose bearings. * * * He kept track of this car also for about four months and was satisfied that the shims were functionally effective. * * *
There was another used-ear dealer by the name of O. S. Prowell who sent cars to appellant for mechanical work. In 1935 appellant installed one-piece tapered shims on an experimental basis and free of charge in a De Soto car owned by Prowell that had loose bearings. Prowell drove the car for several months and then sold it with the shims still in place. He stated that the shims operated satisfactorily in eliminating the loose bearings and reducing oil consumption. * * *.
Appellant made no attempt to preserve the construction and manner of use of his shims in secrecy but freely explained them to various people including Mitchell and Prowell.
Appellant filed an application for patent on his unitary tapered shim on March 24, 1936, Serial No. 70,637, which was prosecuted to allowance on November 23, 1937, and was forfeited and abandoned for failure to pay the final fee. He testified that he was well satisfied with his tapered shim before he filed his first application. * * *. However, he tried unsuccessfully to get someone to manufacture his unitary tapered shim for him and it was because of that fact that he could not make the shim himself at a price the public would pay and because he was short of money that he abandoned the application. * * *.
Appellant ceased his attempts to manufacture a unitary shim and turned his attention to the production of a laminated shim for the reason that it would enable a mechanic to remove as many layers as necessary to bring the shim, to the desired thickness. * * *. He made his first laminated shim in July of *850 1945 * * * and pnt it on the market in September 1945 * * *, which was less than a year prior to the filing of the instant application.
Appellant contends, on the basis of the foregoing, that though his unitary shims were in use more than a year prior to the filing of the instant applicaton, this use comes within the “experimental exception” to the public use rule; that the use was a direct result of, and reasonably incident to experimentation to develop a suitable commercial product; that the shims were installed in the three cars on an experimental basis and that the subsequent sales of the cars by Mitchell and Prowell were incidental to the experiments, which experiments he concedes indicated a succesful reduction to practice, and did not amount to commercial exploitation of the shims by him; that removing “the test shims would have been an onerous undertaking, would have cast doubt on the success of the initial experiments for purposes of establishing reduction to practice, and would have cut off the possibility of obtaining additional information as to the usefulness of the shims through their continued use in the automobiles in question.”
Appellant further asserts that another factor to be considered is that he continued development work on different forms of tapered shims (which work apparently led to the development of his laminated shim) after the last observation of the performance of each of the automobiles in which his shims were placed and “that experiments may continue in an attempt to further perfect the device beyond the requirements of a reduction to practice” without running the risk of being barred by the pubic use provision in the statute.
The board, in answer to appellant’s arguments, stated:
We have carefully considered the arguments and cited authorities in appellant’s main and reply and supplemental briefs, as well as those presented at the hearing. We are not convinced thereby, however, that the facts support appellant’s contention that the instant case comes under the experimentation exception to the public use rule. We can agree with him that the original forms of shims conceived by him and by Allen were installed on an experimental basis but we cannot agree that the fact that the final commercial form in each case was different from the original form can be relied upon to extend the period of experimentation with the original form to within the year prior to filing this application.
Appellant and Allen were fully satisfied that their original form of shim was functionally successful and they stopped experimentation with that form long prior to the critical date of June 24, 1945. Appellant felt sufficiently satisfied with the performance of the unitary shim to file an application for patent on it. It seems to us that the evidence clearly shows that the experimentation with the unitary shim was completed and the idea was abandoned in favor of the laminated shim. When appellant terminated experiments on his unitary shim and allowed it to go into unrestricted use by the public without any reservation of right of inspection or followup of the performance, the period of experimentation, insofar as the unitary shim is concerned, ended and the public use began to run. * * *
*851 After most careful consideration of the facts and the law here involved, we are of the opinion that the decision of the board must be upheld.
35 U. S. C. 102' (b) provides that “A person shall be entitled to a patent unless the invention was * * * in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * This provision and its predecessors have been exhaustively interpreted by the courts. Thus, it is well established that to constitute public use or sale of an invention, it is not necessary that more than one of the invented articles be used or sold, Egbert v. Lippmann, 104 U. S. 333 (1881), or that the article be used or sold for a profit, Elizabeth v. Pavement Company, 97 U. S. 126 (1877), or that the article be used with the knowledge or consent of the inventor, Electric Storage Battery Co. v. Shimadzu ef al., 307 U. S. 5 (1938), or that the invention be necessarily exposed to public view (viz.- — -the invention may be a small element, concealed by its nature, in a larger article; its presence may not be known to the user or purchaser of said article), Hall v. Macneale, 107 U. S. 90, 96, 97 (1882).
As stated by the Supreme Court in the Egbert case, supra:
* * * If an inventor, having made his device, gives or sells it to another, to be used by the donee or vendee, without limitation or restriction, or injunction or secrecy, and it is so used, such use is public, even though the use and knowledge of use may be confined to one person.
There are, however, exceptions to the public use bar. Such an exception is that involving experimental use of the invention. The Supreme Court in the Elizabeth case, supra, stated:
* * * The use of an invention by the inventor himself, or of any other person under his direction, by way of experiment, and in order to bring the invention to perfection, has never been regarded as such a use. * * *
* * * He may have it put up and used in the premises of another, and the use may inure to the benefit of the owner of the establishment. Still, if used under the surveillance of the inventor, and for the purpose of enabling him to test the machine, and ascertain whether it will answer the purpose intended, and make such alterations and improvements as experience demonstrates to be necessary, it will still be a mere experimental use, and not a public use, within the meaning of the statute.
Whilst the supposed machine is in such experimental use, the public may be incidentally deriving a benefit from it. If it be a grist-mill, or a earding-machine, customers from the surrounding country may enjoy the use of it by having their grain made into flour, or their wool into rolls, and still it will not be in public use, within the meaning of the law.
It must be borne in mind that once a prima facie case of public' use or sale of an invention for a period greater than one year preceding the filing of an application for said invention is established, the in *852 ventor bears a heavy burden of establishing by affirmative and convincing proof that the alleged public use or sale was a direct part of or necessarily incident to the experimentation exempted from the effect of the statute. In re Josserand, 38 C. C. P. A. (Patents) 994, 188 F. 2d 486, 49 USPQ 371; Smith & Griggs Manufacturing Co. v. Sprague, 123 U. S. 249, 264 (1887).
In the instant case, appellant concedes that he no longer exercised control over the shims which had been placed experimentally in the three cars and that the cars were sold with the shims still in them. Not only did he not exercise control over the shims but, as well, he lost complete contact with them and was no longer concerned with experimental considerations as to those particular articles. He imposed no limitations or restrictions or injunctions of secrecy on the users of the cars containing said shims. There is no question, as well, that he was satisfied with the results obtained from the use of said shims. Indeed, appellant testified as follows in the interference proceeding heretofore referred to:
XQ. 240. Mr. Blaisdell, referring to the letter which you wrote to Wilkening Manufacturing Company, * * * are the statements you made in that letter true?
A. They are true to this extent: that the product had teen proven and patent had been applied for. * * * (Emphasis added.)
Nor can we overlook the fact that, in 1936, appellant applied for and successfully prosecuted an application for patent on the unitary shim, a further indication that he was satisfied with the results of his tests and that the invention had been completed.
Additional experiments on the particular shims used experimentally were no longer necessary, and, accordingly, no additional experiments were conducted on them. The experimental period having ended and appellant having relinquished all control over the shims, placing no restraints on the use of those shims, the statutory period had begun to run. The use of the shims in the cars during experimentation was, of course, incidental to the experimentation. Once the experimentation ceased, however, their use was no longer incidental to the experimentation. Appellant’s contentions that to require him to remove the shims after experimentation had ceased would not only have cast a cloud on his prospective claims to an actual reduction to practice, but would have been an undue burden upon him are without merit, for he could have obviated all difficulties by merely filing his application for patent within the statutory period.
Appellant, however, places great stress on the alleged fact that, while experimentation on those particular shims may have ceased, and though those particular shims were functionally successful, they were not commercially perfected. His continued experimentation, which *853 eventually led to tbe development of the laminated shim, he continues, prevented the statutory time period from running. He cites General Motors Corp. v. Bendix Aviation Corp., 123 F. Supp. 506, 102 USPQ 58, 69 (N. D. Ind. 1954), as authority for this proposition.
The General Motors Corp. case, in essence, stands for the proposition that though an invention is reduced to practice, “experiments may continue in an attempt to further perfect the device beyond the requirements of a reduction to practice” without the statutory time limit as to public use or sale running. In that case, the inventor continued to experiment on the same device after he had reduced it to practice, “in the hope of demonstrating its utility.” Whether any further changes were made on the device as reduced to practice is not apparent from the court’s opinion. We are of the opinion that the General Motors Corp. case is distinguishable from the case at bar. In that case, the inventor retained possession and control of his invention during the continued “experimentation” and was “experimenting” on the same invention. Here, appellant ceased experimentation on the unitary shims and allegedly began experimenting on a different type of shim (a laminated shim). He lost complete control of the former and placed no restraints on their use. To call the laminated shim a “perfected unitary shim” would be a perversion of the word “perfected.” If appellant were here claiming only a laminated shim, a different question might be before us. But the fact cannot be ignored that claims 1-3, 7 and 9 read directly upon the unitary shims which appellant allowed the owners of the three cars in which said shims were placed to use without restriction. No changes were made nor were improvements attempted on the claimed shim. That invention was complete and all experimentation on it had ceased. What appellant did concerning other shims is of no moment here. Star Mfg. Co. v. Crescent Forge & Shovel Co. et al., 179 F. 856 (7th Cir. 1910).
Appellant places much reliance upon Goodwin et al. v. Borg-Warner Corp. et al., 157 F. 2d 267, 70 USPQ 387 (6th Cir. 1946), also known as the “Daukus” case. In that case, Daukus had placed an experimental clutch plate in the Cadillac of a friend, which Cadillac was sold (after Daukus had experimented on the installation), with the plate still in it. The court, basing its decision upon the consideration that the plate was never used for a profit and that it was sold without Daukus’ knowledge or consent, decided that the use following the sale of the Cadillac was incidental to experimental use and that the statutory period did not run to bar Daukus’ right to a patent for the invention. There was no indication in the opinion as to whether or not Daukus continued to experiment after said sale upon another device which embodied the elements of the invention. The conclusion *854 of the court that the car was sold without Daukus’ knowledge, of course, indicates that he no longer experimented on that particular clutch plate. Appellant also points out that Daukus’ record in the interference proceeding before the court indicated that the owner of the Cadillac had reported to Daukas that “he have very nice clutch.”
We agree with appellant that the “Daukus” case is squarely in point with this case. Any attempted distinction would be, at best, tenuous. Unless there were circumstances present in the “Daukus” case which were not discussed in the opinion of the court, however, we are constrained to conclude that the decision there was unsound and we therefore cannot use that case as a guide in this proceeding. The most significant feature of that case is that the court based its conclusion on the facts that the clutch plate was not sold for profit (or that if profit was derived from the sale, it was incidental to the experimental use) and that it was sold without the knowledge or consent of Daukus. As has heretofore been pointed out, neither is a requirement for the running of the public use bar.
For the foregoing reasons, we agree with the board’s conclusion, as set forth, supra, as to when the public use began to run.
That period of public use being greater than one year prior to the filing date of appellant’s instant application, his right to a patent on claims 1-3,7 and 9 is barred. As heretofore discussed, claims 8 and 10 are unpatentable for the reasons applicable to the rejection of claims 1-3, 7 and 9 in view of Yordon.
The decision of the board is accordingly affirmed.
By reason of illness, O’Connell, Judge, was not present at the argument of this case and did not participate in the decision.
Jackson, J., Retired, recalled to participate herein in place of Cole, J., absent because of illness.