John **RANDOLPH**, Plaintiff-Appellant,

v.

**ALLIS–CHALMERS MANUFACTURING COMPANY**, a corporation, et al., Defendants-Appellees.

No. 12458.

United States Court of Appeals
Seventh Circuit.
March 18, 1959.

**534**

Richard Bushnell, Chicago, Ill. (Richard R. Trexler, Chicago, Ill., on the brief), for plaintiff-appellant.

William E. Anderson, Chicago, Ill., Louis Quarles, Milwaukee, Wis., James F. Coffee, Chicago, Ill., for appellees.

Before SCHNACKENBERG, HASTINGS and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

This is a patent infringement suit between the plaintiff-appellant John Randolph and the defendant-appellee Allis-Chalmers Manufacturing Company, the other two defendants D. D. Kennedy, Inc. and Gordon H. Beer, d/b/a Beer Motors, having been dismissed out below by stipulation at the close of the evidence.

Trial was to the court. The District Court filed findings and conclusions wherein it found and concluded the patent in suit was invalid by reason of public use and not infringed. Judgment was entered conformably and this appeal followed.

Plaintiff has been employed by the Pure Oil Company as a mechanic for many years. During the period from 1941 to 1949 he was stationed at the oil fields of Pure Oil in Mexia, Texas. In 1941 there were five Allis-Chalmers tractors in use at the Mexia fields. Plaintiff was in charge of the maintenance of these tractors. The tractors had, as part of their original equipment, seats that were rigidly attached to the tractor frame. Plaintiff made efforts to construct a seat with some resiliency to replace the original seats. In June, 1941 he made and installed, on three of the tractors, a seat attached to a hinged member that extended forward from the seat to the tractor frame. At the tractor frame the hinged member was pivotally connected to allow the whole unit, member and seat, to ride up and down as required. The unit received its vertical support from a variable rate conical spring and a hydraulic shock absorber. The spring ran from the tractor frame to a point midway on the hinged member and the shock absorber from the frame to a point on the member underneath the seat itself. Both the shock absorber and the spring were pivoted at one end to allow for lateral movement.

In November, 1941 plaintiff made two more seats to replace the remaining rigid assemblies. These two seats differed from the prior three in that the hydraulic shock absorber and the spring became integral units, the spring surrounding

the shock absorber. The principle remained the same but in addition to a more compact unit, protection against violent oscillation of the spring was obtained.

The patent in suit embodying substantially the principle of the last two seat assemblies, was issued July 1, 1952, *on application filed May 15, 1945.*

Title 35 U.S.C.A. § 102 reads in relevant part as follows:

"A person shall be entitled to a patent unless—* * *

"(b) the invention was * * * in public use * * * in this country, more than one year prior to the date of the application for patent in the United States, * * *."

Thus pursuant to statute an inventor has one year of immunity in which to perfect his invention even though this might require a public use. "Public use" may properly be defined as any utilization of the invention by one other than the inventor where the user is under no limitation, restriction or obligation of secrecy to the inventor. Egbert v. Lippmann, 1881, 104 U.S. 333, 336, 26 L.Ed. 755; Application of Blaisdell, 1957, 44 CCPA 846, 242 F.2d 779, 783. "After reduction to practice, unreasonable delay in applying for a patent may be construed to be an abandonment with the consequence that the public is entitled to rights in the invention." Watson v. Allen, 1958, 103 U.S.App.D.C. 5, 254 F.2d 342, 346. If the public use of the invention for a time longer than the statutory period is a necessity prerequisite to its perfection then such use will not bar its patentability, Elizabeth v. Pavement Co., 1877, 97 U.S. 126, 24 L.Ed. 1000, however, use for experimental purposes must be conducted in good faith for the purpose of testing the qualities of the invention and for no other purpose not naturally incident thereto. Hobbs v. Wisconsin Power & Light Company, 7 Cir., 1957, 250 F.2d 100, 108.

It cannot be seriously contended here that the seat construction was not in public use for a greater period of time then the statutory one year. All five seat constructions were used on the tractors of Pure Oil which were in continuous operation at the fields of Mexia, Texas in 1941 and thereafter. This commercial use of plaintiff's structures was carried on by Pure Oil without limitation or restriction and with the approval and full knowledge of the plaintiff. The seats themselves were in such a position that it could hardly be argued that it was a secret use nor did plaintiff swear anyone to secrecy. It would be difficult to say just how many people were actually aware of the structure besides the users themselves inasmuch as there was a number of "roustabouts" who worked with the tractors who had adequate opportunity to study the seats. The tractors were actually driven on the public roads of Texas and when in use were seen by salesmen and anybody else that chose to visit the Mexia field.

Hence there was a public use of the structures from the latter part of 1941 to May 15, 1945, a period of approximately three and one-half years.

Plaintiff contends that such use was absolutely necessary and incidental to a proper and thorough testing of the seat construction, thereby bringing himself within the ambit of the Pavement Co. case, upon which he relies heavily. He argues that before he could reasonably apply for a patent he would have to determine the safety, comfort and durability of his seat construction.

As to the safety factor plaintiff believed the non-rigidity of his seat construction would allow a driver to free himself with less effort if the tractor should fall over than had theretofore been the case. His thesis thus runs that inasmuch as he could not properly create an accident he was entitled to await one in the field. While this argument certainly does not lack ingenuity we feel that to follow it to its logical conclusion would allow the experimental use to continue until the occurrence of an unfortunate casualty which all of the users, among others, would do their utmost to prevent ever taking place. The Supreme

Court has refused to give credence to such an illusory argument. In Hall v. Macneale, 1882, 107 U.S. 90, 97, 2 S.Ct. 73, 79, 27 L.Ed. 367, the inventor of a safe argued that the experimental use would continue until somebody attempted to burglarize the safe. This the Supreme Court stated could result in a situation where "the use would never be other than experimental."

Moreover, we might point out that the patent itself speaks of the safety factor and it was not shown that at the date of application an accident had by then taken place.

It also appears that plaintiff was satisfied with the comfort of the seat as early as November 19, 1941. On this date he sent a letter to the National Inventor's Council wherein he states: "I have driven tractor * * * over rough oil field trails at 30 mi [sic] an hour with reasonable comfort * * *". We fail to see how experimentation and study relating to the comfort of the seat could conceivably take more than one year, nor has plaintiff proved that he even concerned himself therewith after November 19, 1941.

The District Court's Finding No. 27 is as follows:

"The constructions set forth and described in Findings 20 and 23 [the five seat constructions] were complete and operated to the satisfaction of Plaintiff, John Randolph, and of Pure Oil Company in the year 1941 * * *."

Plaintiff now argues that this finding is erroneous in that he had not by that time thoroughly tested the durability of the seat construction. He compares this case to Pavement where the inventor was allowed a six year period in which to test a novel type of pavement that he had placed in a toll road. The Supreme Court in that case pointed out that durability was perhaps the one characteristic to be desired above all else in road pavement. It went on to say that six years of testing under the circumstances was not unwarranted. A pavement that the inventor could guarantee for only two years (the statutory period then) would be of little value.

While we do not say that durability is not desired in a tractor seat we cannot say that plaintiff has shown that three and one-half years were necessary to the testing of his construction. We might also point out that we find no basis in Pavement for holding that the statutory period may be subtracted from the overall time when computing the length of public use to determine its reasonableness, a question which we do not here decide.

██ The burden of proving that the public use for more than one year was necessary for the perfection of the invention by full, unequivocal and convincing proof was on the plaintiff. Smith and Griggs Mfg. Co. v. Sprague, 1887, 123 U.S. 249, 264, 8 S.Ct. 122, 31 L.Ed. 141; Eastman v. Mayor, etc., of City of New York, 2 Cir., 1904, 134 F. 844, 857; Schmeiser v. Thomasian, 9 Cir., 1955, 227 F.2d 875, 876. The plaintiff failed to sustain that burden and the findings of the District Court are supported by adequate substantial evidence. They most certainly are far from being clearly erroneous.

Although speculation is a luxury in which reviewing courts cannot afford to indulge, it may be observed that had the plaintiff been represented by current counsel in 1941 the question of public use would, undoubtedly, have been avoided.

██ On the record as it comes to this Court we must hold that the District Court correctly held the patent was invalid and, as an invalid patent cannot be infringed,[1] the judgment must be affirmed, and

It is so ordered.

1. Cummings v. Moore, 10 Cir., 1953, 202 F.2d 145, 147; Simmons Company v. A. Brandwein & Co., 7 Cir., 1957, 250. F. 2d 440, 447; Diversey Corporation . v. Charles Pfizer and Co., 7 Cir., 1958, 255 F.2d 60, 62; Hyster Company v. Hunt Foods, Inc., 7 Cir., 1959, 263 F.2d 130.