**KNOEDLER MANUFACTURERS INC.,**
Plaintiff-Appellant,

v.

**WESTERN LAND ROLLER CO.,**
Defendant-Appellee.

No. 13884.

United States Court of Appeals
Seventh Circuit.

June 27, 1963.

Curtis F. Prangley, Mark H. Clayton, Chicago, Ill., for plaintiff-appellant.

Ferd Bing, Chicago, Ill., Leigh M. Kagy, Springfield, Ill., Edwin L. Spangler, Jr., Denver, Colo., for appellee.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge and PLATT, District Judge.

DUFFY, Circuit Judge.

■ This is a suit for infringement of plaintiff's United States Patent No. 2,833,396, issued on May 6, 1958, on application filed April 12, 1957. The District Court held Claims 1, 2, 4, 5 and 6, the only claims involved in this suit, were invalid and not infringed.

Since 1946, plaintiff corporation and its partnership predecessor have been engaged in the manufacture of farm equipment including mixer mills, auger elevators and feed grinders.

Defendant has likewise been long engaged in the farm equipment business. For thirty years after 1926, it operated as a partnership. In 1956, it was incorporated in the State of Nebraska. Defendant also manufactures irrigation equipment including pumps of various types.

Plaintiff has manufactured burr mills since 1951. These mills included a conveyor which consisted of a vertical auger which received ground materials from the burrs and delivered the material into a chute secured at the top end of the housing and extending downwardly therefrom to discharge the ground material into wagons, bins, corncribs or other receptacles. The burr mill with the gravity discharge required two men to operate it. The height of the machine was such that often it was difficult to use in and around farm buildings.

Plaintiff developed and tested a lateral auger system similar to that disclosed in the patent in suit, but having the gear at the top of the vertical auger shaft below the gear on the inner end of the horizontal shaft.

Roy Knoedler, who was the secretary-treasurer of the plaintiff, lived in Grand Ridge, Illinois. One of his neighbors was William Ott who operated a feed mill in that city. Knoedler asked William Ott if he could install a burr mill in Ott's feed mill telling him the burr mill was an experimental model.[1] Ott consented, and two of Knoedler's men installed the burr mill in the basement of Ott's feed mill. It was necessary to lower the machine through a hole in the floor of the feed mill. From time to time employees of Knoedler came over to inspect the operation of the machine. Ott testified the operation was satisfactory. Ott did not purchase the burr mill or pay anything for its use.

The unit installed in the Ott feed mill at Grand Ridge, indicated that the height of the transfer throat between the two auger shafts and hence the overall height of the system, could be further reduced by placing the gear which was then on the vertical auger shaft, above the gear on the horizontal auger shaft without changing the function of the gear. Drawings were prepared and the first production unit was completed and exhibited at the Illinois State Fair in August 1956, and at the Indiana State Fair a few weeks later.

Plaintiff's commercial structure differs from that installed in Ott's mill only in the relocation of the bevel gear on the vertical auger shaft so as to mesh on top of the similar bevel gear carried by the lateral auger rather than on the underside thereof. This, of course, involved certain minor mechanical variations such as extending the vertical auger shaft several inches and reversing the con-

---

1. The burr mill included the conveyor system which in turn included the vertical lifting auger and the horizontal discharge auger.

volutions of the lateral auger flighting to accommodate its different direction of rotation. Also, plaintiff included a thrust bearing at the upper end of the vertical auger shaft to absorb the upward thrust of the inner end of the lateral auger as it pivoted within its bearing that acted as a fulcrum when the outer end of the lateral auger was suspended free in cantilever fashion.

Plaintiff's burr mill with the lateral auger won wide public acceptance. From the first offering in 1956 up to December 1, 1959, sales of the plaintiff's burr mills equipped with the lateral augers of the patent in suit, amounted to $2,315,047.

Defendant's interest in plaintiff's machine is shown by the admission of several of its officers, that defendant purchased from a dealer one of plaintiff's burr mills, and parts for such mill, and also one of plaintiff's lateral augers and made numerous measurements therefrom. Such conduct by a competitor is suspect, especially where the competitor's device is in many respects identical with the device examined and measured. However, a competitor who, in good faith, endeavors to "invent around a patent" is likely to follow the same procedure.

Defendant began to promote the sale of a burr mill in 1956. The earliest machine had a vertical auger and a gravity discharge chute. Defendant claims that it went to a horizontal auger in the fall of 1957. While this horizontal auger was being designed, defendant purchased from a dealer, one of the plaintiff's lateral auger attachments. Defendant proceeded to make and market a horizontal auger quite similar to plaintiff's auger. The difference in the two lateral augers was that the defendant used a differently shaped deflector at the extreme outer edge of the housing which contained the lateral auger, and the mounting of the bearing for the vertical auger shaft and the bevel gear at the top of the vertical auger shaft below the gear on the horizontal auger shaft.

Defendant marketed three different lateral auger discharge units within a short period of time. Defendant appar-ently attempted to avoid plaintiff's patent. Defendant's patent counsel advised there was no infringement because each of defendant's units eliminated both the anticlogging structure and the bevel gear and bearing assembly that produced the cantilever mounting of the lateral auger. In defendant's present commercial unit, both extremities of the lateral auger are supported by bearings.

On August 26, 1957, the president of plaintiff wrote to defendant stating defendant's burr mill displayed at the Iowa State Fair included a lateral auger on which plaintiff had a pending patent application. On the basis of the evidence showing such alleged copying, the Patent Office made plaintiff's application "Special" on October 10, 1957.

One of the difficulties encountered by plaintiff in its early gravity discharge conveyor system was clogging at the upper end of the vertical auger. It was ascertained this clogging was due to the wrapping of cornhusks about the upper end of the vertical auger assembly, in the area located opposite the lateral discharge opening of the auger tube.

Plaintiff solved the problem by installing an anti-clogging assembly on the upper end of the vertical auger opposite the lateral outlet of the vertical auger tube. It consisted of a circular plate and a pair of radial fins fastened in fixed position on the vertical auger. Defendant claims the elements of this top plate and fin assembly were essentially the same structurally as the top plate and the fins of the patent in suit. We agree.

During the prosecution of the application that matured into the patent in suit, the Patent Office cited 35 prior patents. Twenty-one claims were subsequently abandoned and withdrawn by cancellation. Finally, the Patent Office relied on eight prior patents.

During the prosecution of the application, patentee repeatedly urged the novelty of his anti-clogging structure composed of the assembly of a circular plate atop the vertical auger shaft and a pair of radial vanes. This combina-

tion and the cantilever mounting of the lateral auger were the only features left as points of novelty, at the conclusion of the Patent Office prosecution.

Each patent claim here in issue is directed to a lateral auger discharge by means of which ground-up material may be elevated and then transferred horizontally into a suitable receptacle. In some of the patent drawings, the screw conveyor is shown in connection with a burr mill. The latter is a machine by which grain and other coarse material may be ground. The burr mill itself is of no importance in this case as the claims in suit are directed to the horizontal discharge feature of the conveyor system.

We are not here concerned with any broad concept of right angle screw conveyor systems. What we must consider is an arrangement of bevel gears and bearings at the junction of two screw conveyor elements disposed at right angles to each other, and the anti-clogging device of a top plate and a pair of fins on the vertical auger.

Plaintiff was not the first to interconnect two screw conveyors within a right angle housing for the purpose of transferring material around a corner. The use of vertical and horizontal augers in material-conveying systems was old in the art. A chart in evidence discloses several prior art conveying systems utilizing two augers, one vertical and one horizontal, mounted in housings with a by-pass throat. The augers are connected by gears. In one unit the augers are offset laterally while in others the augers have their axes of rotation in the same plane.

The anti-clogging assembly was strongly urged by the patentee from the beginning as being a novel and patentable feature. The patents which were cited did not show any similar device, yet both Fred and Roy Knoedler admitted the plate and fin structure had been used by them in substantially the same form as in their patented structure, for more than one year before the patent application herein was filed. Thus, it was the plaintiff itself that dedicated that structure

and combination to the public, if the installation in the Ott mill was a public use.

As to the second feature, to-wit, the cantilever mounting of the lateral auger, the plaintiff on the trial seemed to reverse the position that it took before the Patent Office. On the trial, plaintiff's witnesses admitted that the precise location of the bevel gear on the vertical auger shaft above the bevel gear on the inner end of the horizontal auger together with the placement of the thrust bearing, journalling the vertical auger above its bevel gear, were unimportant to the cantilever feature. Yet, these were elements stressed in the Patent Office and were mentioned in several of the claims.

At the trial, plaintiff adopted the theory that the entire lateral auger assembly included not only the auger itself, but also the housing of the lateral auger, the inclined by-pass throat and the vertical auger tube, all cooperated with one another to produce the cantilever mounting of the right angle auger discharge.

The District Court found the plate and fin structure shown in Knoedler's Bulletin KM–123 was not before the Patent Office; that it had been sold by plaintiff for more than a year before the filing date of the patent in suit, and concluded that Claims 1, 2, 5 and 6 would never have been allowed, had the plate and fin structure of the Knoedler Bulletin KM–123 been known to the examiner.

The District Court also found that it would have been obvious for more than one year prior to the filing of the application in suit to one having ordinary skill in the art to associate the plate and double fin structure of Knoedler Bulletin KM–123 with a right angle screw conveyor such as shown in Link Belt catalog No. 400, Simonds patent No. 281,572 or Wightman patent No. 1,703,130 to produce a right angle screw conveyor precisely as defined by Claims 1, 2, 4, 5 and 6 of the patent in suit, and in the resulting structure the old elements

would function the same way as they had in the prior art.

This case illustrates a situation often encountered in patent litigation. The patentee found it necessary to present a narrow construction of the claims in the Patent Office in order to avoid the prior art, while in litigation for infringement of the patent, the patentee attempts to apply a broad construction in order to cover the accused device.

Whether the installation of plaintiff's right angle screw conveyor in the Ott mill was a public use, is a rather close question. Roy Knoedler did tell Ott it was an experimental model. The conveyor was located in the basement of the Ott mill. Apparently there was no necessity or occasion for frequent inspection.

The evidence discloses the conveyor installed in the Ott mill was substantially like the structure manufactured by defendant. It had an anti-clogging structure composed of a top plate and a pair of fins at the upper end of the vertical auger. It also had a lateral auger that was not supported at the outer end. It was used commercially and for profit by Mr. Ott. No injunction of secrecy was placed upon him.

This Court, in Randolph v. Allis-Chalmers Manufacturing Company, 264 F.2d 533, said at page 535: " 'Public use' may properly be defined as any utilization of the invention by one other than the inventor where the user is under no limitation, restriction or obligation of secrecy to the inventor."

In Jordan v. Hemphill Co., 4 Cir., 180 F.2d 457, p. 462, the court cited from Egbert v. Lippmann, 104 U.S. 333, 336, 26 L.Ed. 755: " 'If an inventor, having made his device, gives or sells it to another, to be used by the donee or vendee, without limitation or restriction, or injunction of secrecy, and it is

so used, such use is public, even though the use and knowledge of the use may be confined to one person.' "

We agree with the finding of the District Court, " * * * The right angle screw conveyor structure installed by Plaintiff at Ott Feed Mills was used without repair, modification, or servicing * * * from 1955 until the date of the trial; the feed or grain that was ground by the mill and transported by the right angle screw conveyor was sold commercially; no injunction of secrecy was imposed on Mr. Ott, the owner of the mill, and, although the right angle conveyor was located in the basement of the Ott Feed Mill, the basement was not locked and the conveyor structure was accessible to any workman or customer who cared to go into the basement * * * Such unrestricted, non-secret use of the structure in the Ott Mill between September 1955 and April 12, 1956 constituted a public use."

The patentee, Fred Knoedler, admitted that functionally the gears connecting the vertical and horizontal auger shafts did the same job, i. e., provided a driving connection between the two augers, irrespective of whether the gear carried by the vertical auger was mounted above or below the horizontal auger. The combination of gears, augers, bearings, radial vanes and the plate at the top of the vertical auger, were all old in the prior art and performed the same functions as they did in the prior art. There were no unusual or unexpected results.

In spite of the commercial success of plaintiff's conveyor, we must affirm the District Court on the issue of validity. Commercial success without invention will not provide patentability. We also agree with the trial court that plaintiff failed to sustain its burden of proof as to alleged infringement of the claims in suit.

Affirmed.